CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

SEPTEMBER TERM, 1924.

---

LEWIS v. NATIONAL FIRE INS. UNDERWRITERS et al.*

(Division B.   June 16, 1924.   Suggestion of Error Overruled Sept. 15, 1924.)

[101 So. 296.   No. 24047.]

1. INSURANCE.   *List of goods by lot held not, "itemized inventory" within iron safe clause.*
   List of goods in lots, as one lot of ribbons, one lot of dry goods, etc., without an itemized list of the goods in the lots, *held* not an "itemized inventory" of the stock within iron safe clause.

2. INSURANCE.   *Failure to produce itemized list kept pursuant to iron safe clause held to preclude recovery.*
   Insured's failure to produce itemized inventory kept in compliance with iron safe clause *held* to preclude recovery on fire policies though list was lost, in the absence of a showing that the list was not lost by the fault, carelessness, or negligence of the insured.

3. INSURANCE.   *Policy held to require inventory within thirty days.*
   That insured merchandise was a complete stock of merchandise purchased by insured from another *held* not to render inapplicable provision of policy that if no inventory had been taken within twelve months one should be taken within thirty days.

---

*Headnotes 1.   Fire Insurance, 26 C. J., section 318;   2.   Fire Insurance, 28 C. J., section 318;   3.   Fire Insurance, 26 C. J., section 318.

APPEAL from circuit court of Monroe county.
HON. C. P. LONG, Judge.

Suit by J. A. Lewis against the National Fire Insurance Underwriters and others.  Judgment for defendants, and plaintiff appeals.  Reversed and judgment rendered.

*Leftwich & Tubb,* for appellant.

I.  It was error in the court below to direct a verdict for the defendants as to the stock of merchandise. *Big Creek Drug Company* v. *Stuyvesant Ins. Co.,* 115 Miss. 333 and 561; *Miss. Home Insurance Co.* v. *Stevens,* 93 Miss. 439; *Insurance Co.* v. *Farnsworth Lumber Co.,* 72 Miss. 555; *Mitchell* v. *Miss. Home Insurance Co.,* 72 Miss. 53; *Home Insurance Co. of N. Y.* v. *Gibson,* 72 Miss. 58; *Rivari* v. *Queen Insurance Co.,* 62 Miss. 720.  On the general subject of waiver by the company, see *Natchez Insurance Co.* v. *Stanton,* 2 Smedes & Marshall, 234; *Rivari* v. *Queen Insurance Co.,* 62 Miss. 720; *American Fire Insurance Co.* v. *Bank,* 73 Miss. 469; *Phoenix Ins. Co.* v. *Bowdre,* 67 Miss. 620; *Insurance Company* v. *Sheffy,* 71 Miss. 915.

The defendant insurance companies contended that the plaintiff was not entitled to recover because he had not made an inventory of his stock of merchandise within a year, nor within thirty days after the issuance of the policy.  The court below in ruling on appellees' motion to exclude the evidence and for a directed verdict took too narrow a view of the making of the inventory and keeping of the books as contemplated by the iron safe clause in these policies. *Phoenix Insurance Company* v. *Camille Bourgeois,* 105 Miss. 698.  In the instant case there would be no trouble for the jury to determine precisely or with sufficient accuracy, the goods on hand at the time of the fire by adding to the amount of goods bought from Gentry the purchases made thereafter and taking therefrom the cash and credit sales which we have already shown is easily to be determined from the statement heretofore made. *Georgia Life Insurance Company*

v. *Friedman,* 105 Miss. 779. We do not understand the
rule of construction to be so strict and rigid that in this
sort of case where the merchant once had in his posses-
sion a list of the articles with their value and afterwards
accidentally lost it, or misplaced it, or if it had become
destroyed otherwise than by the result of the fire which
consumed the plaintiff's goods, that he could not be heard
to give evidence of the contents of the paper after having
proved its loss. *Home Insurance Company* v. *Delta Bank,*
71 Miss. 608.

II.   THE COURT SHOULD HAVE DIRECTED A VERDICT FOR
THE PLAINTIFF FOR THREE-FOURTHS OF THE ENTIRE VALUE OF
THE FIXTURES INCLUDING THE CASH REGISTER AND THE FILING
CABINET BOUGHT AFTER THE POLICY WAS ISSUED.   The court,
it will be observed, directed the jury to find a verdict for
the plaintiff for three-fourths of the value of the fixtures
contained in the store at the time the policy was written.
The construction of the court below would forbid the
storekeeper from renewing his fixtures, or adding or
changing the make of his adding machine, or buying a
new adding machine, or as in this case buying a cash
register, as recognized necessity.   The risk as to the fix-
tures is a shifting risk as well as to the merchandise.   The
cash register bought by Lewis is named in the terms of
the policy; see 26 C. J. 93, par. 92; *Boyd* v. *Miss. Home
Ins. Co.,* 75 Miss. 47.

The court will construe this policy liberally in favor
of the assured and as against the insurer, and will con-
strue the contract so as to include the property in ques-
tion if the language is susceptible of two meanings, one
of which would include and the other exclude it.

*A. A. Armistead,* for appellees.

I.   The effort to prove the amount of the stock by in-
voices has been decided by this court in *Insurance Com-*

pany v. *The Bank,* 71 Miss. 614, and *Bruce York* v. *Home Insurance Company of New York,* 86 So. 714, which latter case was affirmed by the supreme court of Mississippi without an opinion.

The taking of the inventories required by the policy is indispensable to a recovery thereunder, and without the annual inventory or the thirty-day inventory required by the contract, no recovery can be had for any loss, no matter what amount of goods was on hand at the time of the fire. *Insurance Company* v. *Dorsey,* 102 Miss. 84 at 87. The supreme court passed on this same question again in another unreported case, that of *J. Nosser and Bro.* v. *Glens Falls Insurance Co.,* 76 So. 771. The writer of this brief was the attorney for the insurance company in the Nosser Bros. case. The facts were that Nosser Bros. had not taken an inventory within a year before the date of the policy, nor thirty days thereafter, and suit to recover on the inventory taken just before the fire was entered. The lower court directed a verdict for the defendant insurance company and it was affirmed on appeal. This case became a controlling precedent and binding on the court. See *Robertson* v. *Miss. Valley Co.,* 120 Miss. 159. This appellant then had no "itemized inventory" which the policy required, and which, the courts have held, is compulsory, without which no recovery can be had. 2 Cooley's Briefs on Insurance, p. 821; 1 Clements on Fire Insurance, p. 271.

Counsel insists that the rule of construction is not so strict and rigid that a merchant, who once had in his possession a list of the articles with their values, and happened to have accidentally lost it or misplaced it, or if it had become destroyed otherwise than by the result of fire which consumed plaintiff's goods, could not be heard to give evidence of the contents of the paper after having proved his loss. We take pleasure in calling Counsel's attention to *Liverpool & London & Globe Ins. Co.* v. *Kearney,* 180 U. S. 132-138. Here the books were lost while

the assured was attempting to remove them from the burning building out of his safe, and the court held in that state of facts that he was undertaking to preserve the books, but if the inventory or the books are lost by negligence, fault, or design of the assured he is not relieved from the contract obligation to produce these books and inventories and prove his loss alone by them.

As to the books, the contract does not require him to keep any particular kind of books except there must be a "set of books," which shall clearly and plainly present a complete record of business transacted including all purchases, sales and shipments, both for cash and credit, from the date of inventory as provided for in the first section of this clause and during the continuance of this policy. The supreme court of Mississippi in *Penix* v. *American Central Ins. Co.,* 106 Miss. 145, named kind of books he must keep, such as an accountant could take and determine his loss from the books alone unaided by the testimony of the plaintiff except as to the manner of keeping them. See, too, *Insurance Co.* v. *Dorsey,* 102 Miss. 84-87; *Goldman* v. *Ins. Co.,* 48 La. Ann. 225; *Home Ins. Co.* v. *Williams,* 237 Fed. 171; *Ins. Co. of North America* v. *Williams,* 77 So. beginning on page 159; *Monger & Henry* v. *Delaware Ins. Co.,* 79 S. W. 7.

II.   Was the court correct in limiting recovery to three-fourths of the value of the furniture and fixtures? This three-quarter value clause in the contract sued on provided that the insurance company should not be liable for an amount greater than three-forths of the actual cash value of each item of property insured under this policy. Mr. Lewis himself, testified on page 88 of the record that eighty-five dollars was to be deducted from the two hundred and forty dollars at which he valued his fixtures. On this testimony the court directed a verdict for the plaintiff in the court below for three-fourths of the two hundred and forty dollars less the

credit of eighty-five dollars.  This was done on the testimony of the witness himself and surely neither he, nor his attorneys can now complain of that result.

Argued orally by *C. L. Tubb,* for appellant.

COOK, J., delivered the opinion of the court.

The appellant, J. A. Lewis, instituted this suit in the circuit court of Monroe county against the National Fire Insurance Underwriters, the National Hardware Dealers' Mutual Fire Insurance Company, and the Hardware Dealers' Mutual Fire Association, on two policies of insurance covering a stock of merchandise and fixtures which had been destroyed by fire.  At the conclusion of the plaintiff's evidence a motion to exclude this evidence and grant a peremptory instruction for the defendant as to the stock of merchandise and to grant a peremptory instruction for the plaintiff for three-fourths value of the fixtures, was sustained, and from the judgment entered in pursuance of this instruction, this appeal was prosecuted.

To the declaration, which is in the usual form, the defendants filed a plea of the general issue, and gave notice thereunder that evidence would be offered to show a breach of what is known as the "iron safe clause" contained in the policy contract, and also filed a special plea averring that a writ of garnishment had been served on the defendants by Morris & Co., of Chicago, Ill., as a creditor of the plaintiff, and that any sum adjudged by the court to be due by them to the plaintiff should be ordered to be first applied to the discharge of this garnishment.

The iron safe clause contained in the two policies sued on is as follows:

"First.  The assured will take a complete itemized inventory of stock on hand at least once in each calendar

year, and unless such inventory has been taken within twelve calendar months prior to the date of this policy, one shall be taken in detail within thirty days of issuance of this policy or this policy shall be null and void from such date, and upon demand of the assured the unearned premium from such date shall be returned.

"Second. The assured will keep a set of books, which shall clearly and plainly present a complete record of business transacted, including all purchases, sales and shipments, both for cash and credit, from date of inventory as provided for in first section of this clause, and during the continuance of this policy.

"Third. The assured will keep such books and inventory, and also the last preceding inventory, if such has been taken, securely locked in a fireproof safe at night, and at all times when the building mentioned in this policy is not actually open for business; or, failing in this, the assured will keep such books and inventories in some place not exposed to a fire which would destroy the aforesaid building. In the event of failure to produce such set of books and inventories for the inspection of this company, this policy shall become null and void and such failure shall constitute a perpetual bar to any recovery thereon."

The material facts, as they appear from the testimony of the appellant himself, are substantially as follows: On the 23d day of August, 1922, the appellant purchased in bulk from one J. F. Gentry a stock of general merchandise and store fixtures, consisting of dry goods, groceries, shelf or canned goods, and certain store fixtures located in a frame store building on Main street, in the town of Amory. In making a list of the goods at the time of the purchase appellant and Gentry, the seller, did not list the items of the merchandise, but they went through the stock shelf by shelf and listed the goods in lots, as one lot of notions, one lot of ribbons, one lot of dry goods, one lot of coffee, one lot of shelf of canned goods, etc.,

giving the kind of the goods, and the price and value in lots, this list comprising five sheets of tablet paper, the merchandise aggregating in value about nine hundred dollars, and the fixtures one hundred and sixty-five dollars. After this list was completed the appellant and Gentry agreed upon a price of seven hundred and fifty dollars for the entire lot of merchandise and fixtures, and the appellant paid this sum to Gentry. On the following day the appellant applied to the agent of the defendant companies for a policy of insurance on the stock of goods and fixtures, and this agent thereupon inspected the goods and fixtures and wrote the first policy sued on for one thousand dollars, distributing the insurance as eight hundred and fifty dollars on the stock of merchandise and one hundred and fifty dollars on the fixtures. The appellant continued the business until December 28, 1922, the date of the fire, and on the 9th day of October, 1922, having increased his stock of merchandise, he applied for and secured an additional policy covering one thousand dollars on the stock of merchandise alone.

The appellant testified that on the day he purchased the stock from Gentry he opened up a set of books, which consisted of a book in which he entered as the first item the following: ''Store and fixtures bought from Gentry, seven hundred and fifty dollars.'' Under this he entered his daily purchases, giving the date, the name of the person from whom the purchase was made, and the total amount of the invoice. This book also contained his daily cash and credit sales, and the book, together with the invoices, were offered in evidence as a compliance with the requirement of the policy to keep a set of books which shall clearly and plainly present a complete record of the business transacted.

The appellant did not have an iron safe in his store, and he testified that he kept his books in his bedroom, and that he had not taken an inventory of his stock of goods. He did not produce the list prepared by him and Gentry

at the time he purchased the stock from Gentry, and he testified that it was lost or mislaid; that he thought he placed this list in a dresser drawer in his bedroom, but when he looked for it it was not there, and he had been unable to find it; that he had moved his room two or three times since the date of his purchase, and presumably this list had been lost in so doing.

It may be conceded for the purpose of this decision that the book produced by the appellant was a substantial compliance with the requirement to keep a set of books. The decisive question presented is whether or not there was a compliance with the requirement to take a complete itemized inventory of the stock on hand at least once in each calender year, or within thirty days after the issuance of the policy, if one had not been taken before the policy was issued, and to produce such inventory for the inspection of the defendant companies.

We are clearly of the opinion that the court below was correct in holding that this provision of the policy had not been complied with. The appellant contends that the invoice or list of the goods made at the time of the purchase was a sufficient inventory within the contemplation of the policy, and since this list had been lost the requirement that it be produced was satisfied by the testimony of the appellant as to its contents.

In the case of *Mitchell* v. *Insurance Co.*, 111 Miss. 253, 71 So. 382, an inventory, made out in lots as was the list in the present case, was, at the request of the agent of the insurance company furnished to him before the policy was issued. This inventory was examined and approved by the agent, and the assured was informed that it was sufficient. Under that state of facts the court held that, since the inventory had been furnished at the request of the agent, and the agent knew that the assured was undertaking to furnish him with an inventory of merchandise in his store upon which he desired to obtain insurance, and under these circumstances he accepted and ex-

pressly approved it and issued the policy thereon, the company was estopped by its conduct to deny the sufficiency of the inventory. There are, however, no such facts in the present case. The appellant did testify that when the agent of the company inspected his stock he saw a list of the fixtures contained therein, but there is nothing in that fact or this record that could constitute an estoppel, and we do not think a list prepared as was the one in this case constitutes a compliance with the requirement that an itemized inventory be taken. If it should be conceded, however, that this list was sufficient, it was not produced, and the testimony fails to show that it was not lost by the fault, carelessness or negligence of the appellant; and in the case of *Insurance Co.* v. *Kearney*, 180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460, the supreme court of the United States said:

"We are of opinion that the failure to produce the books and inventory, referred to in the policy, means a failure to produce them if they are in existence when called for, or if they have been lost or destroyed by the fault, negligence, or design of the insured."

Another contention of the appellant seems to be that, since the assured began business by taking over a complete stock of merchandise which he had bought from another, he was not required within the thirty days thereafter to take a new inventory, nor was he required to produce at the trial the original invoice of the goods by which they were purchased, or any other inventory, and in support of this contention he strongly relies on the case of *Home Insurance Co.* v. *Delta Bank*, 71 Miss. 608, 15 So. 932. While the language of the court in that case appears to support this contention of the appellant, it is clear that it does not do so when the facts of the case and the clause of the policy under review are considered. The clause of the policy under review in that case is entirely different from that involved in the present case. In the case at bar the requirement of the policy is that

"the assured will take a complete, itemized inventory of stock on hand at least once in each calendar year, and unless such inventory has been taken within twelve calendar months prior to the date of the policy, one shall be taken in detail within thirty days of the issuance of this policy, or this policy shall be null and void from such date," while the clause involved in the Delta Bank case only required the assured to keep and produce the last inventory of the business. There was no requirement whatever that any inventory should be taken, and the court simply held that, since no inventory of the business had been taken, the assured was not required to produce any at the trial, the language of the court upon this point being that—"The grocery business was begun March 11, 1892, and no inventory of the grocery stock had been taken, and, therefore, there was no inventory to be preserved or produced as required by the policy."

The court also held in that case that—"The invoice of the goods by which they were purchased was not the sort of inventory contemplated by the policy."

In *Insurance Co.* v. *Dorsey,* 102 Miss. 81, 58 So. 778, the court used the following language, which is applicable to the present case:

"No mere proof that there was some merchandise, or a large stock of merchandise, *in situ* at the time of the fire, can be substituted for an inventory. No amount of evidence, however convincing, as to the value of the goods lost, can suffice to abrogate the covenant and warranty. The parties to the contract agreed to take an inventory, and this inventory, taken according to the contract, is the only evidence competent to prove any loss for which the company is liable, even though it be conceded that the property described in the policy was destroyed by fire."

It follows from the views herein expressed that the action of the court below in granting an instruction directing a verdict for the defendant companies as to the stock of merchandise was correct.

The court also granted an instruction directing the jury to find for the plaintiff for one hundred sixteen dollars and twenty-five cents, being three-fourths of the value of the fixtures at the time the policy was written, and the appellant assigns as error this action of the court in limiting the recovery to three-fourths of the value of the fixtures at the date of the policy, instead of three-fourths of their value at the date of the fire. After the policy was in effect, the appellant purchased other fixtures and placed them in his store, thereby increasing the total value of the fixtures to a sum three-fourths of which will amount to considerably more than the face of the policy on the fixtures. Consequently we think the appellant was entitled to recover the full amount of the policy on these fixtures.

The judgment of the court below will therefore be reversed, and judgment will be entered here for the appellant for the sum of one hundred and fifty dollars, with direction that it be applied first to the satisfaction of the garnishment of Morris & Co.

*Reversed, and judgment for appellant.*